UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/22/2021
```

```
┌─────────────────────────────────────┐
│ Victor A. Worms,                      │
│                                       │
│                       Appellant,      │
│                                       │
│         —v—                           │
│                                       │
│ State Corporation "Deposit Insurance  │
│ Agency,"                              │
│                                       │
│                       Appellee.       │
└─────────────────────────────────────┘

┌─────────────────────────────────────┐
│ Victor A. Worms,                      │
│                                       │
│                       Appellant,      │
│                                       │
│         —v—                           │
│                                       │
│ Yuri Vladimirovich Rozhkov,           │
│                                       │
│                       Appellee.       │
└─────────────────────────────────────┘
```

20-cv-3505 (AJN)

20-cv-3510 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Victor A. Worms appeals from an order denying his motions to withdraw as counsel in two related bankruptcy cases. The bankruptcy court held Worms in contempt for defying its discovery orders. Another court in this district affirmed in part and remanded for the bankruptcy court to consider the appropriate amount of per diem sanctions. Worms contends that by requiring his continued involvement in the case while the bankruptcy court considered the amount of contempt sanctions against him, the bankruptcy court subjected him to involuntary servitude in violation of the Thirteenth Amendment and otherwise abused its discretion. These arguments are frivolous. The Court affirms.

## I.     Background

The factual background of these bankruptcy cases is ably set out in Judge Liman's

opinion on the appeal from the bankruptcy court's orders holding Worms in contempt and

awarding attorneys' fees based on Worms's failure to comply with discovery orders.  *See*

*Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020).  From 1995 to 2016, Larisa Ivanovna

Markus, the debtor in No. 20-cv-3510, served as the president of Vneshprombank, the debtor in

No. 20-cv-3505 and formerly one of Russia's largest banks.  *Id.* at 685. A Russian court

sentenced Markus to an eight-and-a-half year prison term for her role in a conspiracy to pilfer the

bank's funds.  *Id.*  Both Markus and the bank commenced insolvency proceedings in Russia.  *Id.*

Foreign representatives of Markus and the bank filed petitions to recognize those proceedings to

pursuant to Chapter 15 of the Bankruptcy Code.  *Id.* Worms represents the debtors in both

Chapter 15 proceedings.

The bankruptcy court recognized Markus's foreign bankruptcy proceedings and

authorized the foreign representative to conduct discovery.  Markus Designation of Record

(MDR), No. 20-cv-3510, Dkt. No. 6, at 1928–29.  Discovery disputes soon arose.  *Markus*, 615

B.R. at 686–87.  After Worms repeatedly refused to comply with a subpoena and court orders,

the bankruptcy court held him in contempt, imposing monetary sections of $34,000 for his past

noncompliance and $1,000 per day going forward.  *See id.* at 686–95; MDR 4981–82, 5294–318.

In imposing sanctions, the bankruptcy court found "that Worms knowingly and intentionally—

indeed brazenly—violated previous Court orders compelling compliance with discovery" and

had "engaged in a continuous pattern of misconduct, disregarding clear warnings from the Court

that failure to comply with Court orders would lead to imposition of sanctions."  MDR 5302.

The bankruptcy court later awarded fees against Worms in connection with the motion for sanctions against him. *Markus*, 615 B.R. at 695–96; MDR 6898–900.

Worms appealed those orders. The district court held that the bankruptcy court's factual findings were well supported by the record. *Markus*, 615 B.R. at 710–11. It agreed with the bankruptcy court that Worms "flouted the Bankruptcy Court's authority" and "put on a seemingly inexhaustible parade" of "plainly non-meritorious" excuses. *Id.* at 711. Thus, the district court held that the bankruptcy court properly exercised its discretion to impose monetary sanctions for civil contempt, but it vacated the $34,000 lump-sum sanction for past misconduct as an impermissible criminal penalty. *Id.* at 714. It remanded to the bankruptcy court to determine the appropriate amount of per diem sanctions. *Id.* at 714–15. The district court also remanded the fee award for the bankruptcy court to clarify whether the award rested on Federal Rule of Civil Procedure 37 or the court's inherent powers. *Id.* at 717.

Just days before the district court ruled on the sanctions and fees appeals, Worms moved to withdraw as counsel in the bankruptcy proceedings. Vneshprombank Designation of Record (VDR), No. 20-cv-3505, Dkt. No. 5, at 1641–42; MDR 7085–86. The only reason he cited was non-payment of fees. VDR 1644; MDR 7087. At that time, Worms remained counsel of record on another appeal in the Markus case concerning the bankruptcy court's order requiring assets held by Markus's revocable trust to be turned over to the foreign representative. *See Markus v. Razhkov*, No. 19-cv-10129 (AT). He did not seek to withdraw in that appeal. *See id.*; VDR 1760.

The bankruptcy court held a hearing three days after the district court's remand. *See* VDR 1713–64. The court explained that it would not grant the motion to withdraw until after it dealt with the sanctions issues involving Worms remanded from the district court. *Id.* at 1725,

1760–61 ("[A]s of last Friday there are issues on remand from Judge Liman specifically addressing you. . . . I am not relieving you as counsel of record in the Chapter 15 case until I have resolved the issues . . . that were sent back to me last Friday on remand from Judge Liman."). It thus orally denied the motions without prejudice. *Id.* At the hearing, the bankruptcy court asked Worms if he had moved or intended to move to withdraw as counsel in the appeal concerning the turnover order that remained pending. *Id.* 1760. Worms said that he had not. *Id.* The court entered a written order the next day stating that it denied Worms's motions to withdraw without prejudice in light of the remanded sanctions issues and pending appeal on which Worms remained counsel of record. MDR 1–2. Worms now appeals the order denying his motions to withdraw.

## II.     Standard of Review

This Court reviews a bankruptcy court's conclusions of law de novo and its factual findings for clear error. *In re Sabine Oil & Gas Corp.*, 562 B.R. 211, 215–16 (S.D.N.Y. 2016) (citing *In re Halstead Energy Corp.*, 367 F.3d 110, 114 (2d Cir. 2004)). A trial court's denial of a motion to withdraw is reviewed for abuse of discretion. *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999) (per curiam).

## III.     Discussion

### A.  The Court has mandatory jurisdiction under the collateral order doctrine

District courts have mandatory jurisdiction over appeals from final orders of the bankruptcy courts and may grant leave to appeal interlocutory orders. 28 U.S.C. § 158(a), (c). In bankruptcy proceedings, final orders are those that "finally dispose of *discrete disputes within the larger case*." *In re Fugazy Exp., Inc.*, 982 F.2d 769, 775 (2d Cir. 1992) (quoting *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1283 (2d Cir. 1990)). However, even if an order does

4

not resolve "an entire claim on which relief may be granted," *id.*, it may be appealable under 28 U.S.C. § 158(a) pursuant to the collateral order doctrine.  *See N. Fork Bank v. Abelson*, 207 B.R. 382, 387 (E.D.N.Y. 1997).  That doctrine deems final a "small category [of] decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action."  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995)).

The Second Circuit has squarely held that denial of a motion to withdraw as counsel is reviewable under the collateral order doctrine.  *Whiting*, 187 F.3d at 320; *see also United States v. Culbertson*, 598 F.3d 40, 49 (2d Cir. 2010).  Though the issues related to Worms's motions to withdraw here are more closely connected to the merits of the underlying action than in a typical case, the Supreme Court has instructed that courts must "not engage in an 'individualized jurisdictional inquiry'" when deciding whether a ruling qualifies as a collateral order.  *Mohawk Indus.*, 558 U.S. at 107 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473 (1978)). Instead, a court must consider only "the entire category to which a claim belongs."  *Id.*  Because the appealed order here is a denial of a motion to withdraw as counsel, and the Second Circuit has held that this category of orders is reviewable under the collateral order doctrine, 28 U.S.C. § 158(a) requires this Court to exercise jurisdiction.  Nor is the Court able to draw any jurisdictional distinction based on the bankruptcy court's denial of Worms's motions "without prejudice" to renewal after disposition of the remanded sanctions issues.  As with any order denying a motion to withdraw, it conclusively determined that Worms would be required to

represent a client during the pendency of particular proceedings.  Thus, the Court determines that it has mandatory jurisdiction under 28 U.S.C. § 158(a).[1]

### B.  The bankruptcy court did not subject Worms to involuntary servitude in violation of the Thirteenth Amendment

Worms's argument that denying his motion to withdraw amounts to involuntary servitude in violation of the Thirteenth Amendment is utterly without merit.  Adopted following the Civil War, the Thirteenth Amendment forbids slavery and involuntary servitude except as punishment for a crime.  "The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase 'involuntary servitude' was intended to extend 'to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'"  *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (quoting Butler v. Perry, 240 U.S. 328, 332 (1916)).

Denying an attorney leave to abruptly withdraw from a representation that attorney has voluntarily undertaken is not akin to slavery.  No circuit court has accepted any argument along these lines.  *See, e.g.*, *United States v. Parker*, 439 F.3d 81, 109 n.24 (2d Cir. 2006) (requiring counsel to continue representation after retainer ran out did not violate Thirteenth Amendment); *United States v. De La Cruz*, 870 F.2d 1192, 1194 (7th Cir. 1989) (requiring counsel to continue representation on appeal without compensation did not violate Thirteenth Amendment); *Family Div. Trial Lawyers of Superior Court-D.C., Inc. v. Moultrie*, 725 F.2d 695, 704–05 (D.C. Cir. 1984) (inadequate compensation of CJA attorneys did not violate Thirteenth Amendment). Moreover, it flies in the face of a wealth of judicial and historical precedent governing the

---

[1] If jurisdiction did not lie under 28 U.S.C. § 158(a), the Court would deny leave to appeal under 28 U.S.C. § 158(c) because the appeal does not present "substantial ground for difference of opinion."  *In re Futter Lumber Corp.*, 473 B.R. 20, 26 (E.D.N.Y. 2012) (quoting 28 U.S.C. § 1292(b)).

standards for attorney withdrawal.  *See Whiting*, 187 F.3d at 320.  Nearly every court in the country has a rule resembling this district's Local Rule 1.4, which balances the interests of counsel seeking to withdraw against the interests of the court and other parties in the orderly administration of justice.  It is well accepted that membership in a professional bar and appearance as counsel before a court entails certain professional obligations, including the requirement to obtain a court's leave before withdrawing from a case.  *See De La Cruz*, 870 F.3d at 1194.

Taken at face value, Worms's implausible reading of the Thirteenth Amendment would grant any attorney carte blanche to withdraw from a case on a whim.  Though he focuses particularly on nonpayment of fees, the Thirteenth Amendment does not distinguish between forced labor for pay and for free.  To the contrary, many cases in which the Supreme Court has found a violation of the Thirteenth Amendment have involved forced work for remuneration.  *See Kozminski*, 487 U.S. at 943 (discussing cases in which those who failed to work to pay off a debt or failed to provide agreed-upon services for payment were subject to criminal penalties).  There is nothing special, for constitutional purposes, about an attorney who seeks to withdraw for nonpayment of fees as opposed to one who seeks to withdraw for some other reason.  In either case, the standards governing a motion to withdraw are regulations of the attorney's professional conduct—akin to a rule that a doctor not abandon a patient mid-surgery, not a state of involuntary servitude.

Worms voluntarily undertook the representation in this case and appeared before the bankruptcy court knowing that applicable court rules would govern whether and in what circumstances he would be allowed to withdraw.  A court's denial of an attorney's motion to withdraw in these circumstances plainly does not contravene the Thirteenth Amendment.

**C.  The bankruptcy court did not abuse its discretion in denying Worms's motion to withdraw**

Worms's argument that the bankruptcy court abused its discretion by denying him leave to withdraw while it considered the amount of sanctions against him likewise lacks merit. Because "[t]he trial judge is closest to the parties and the facts," they "are due considerable deference in decisions not to grant a motion for an attorney's withdrawal." *Whiting*, 187 F.3d at 320. This Court's Local Rule 1.4 allows withdrawal only with leave of court and requires an attorney seeking to withdraw to demonstrate "satisfactory reasons" for withdrawal in light of "the posture of the case." "In addressing motions to withdraw as counsel, district courts have typically considered whether the prosecution of the suit is likely to be disrupted by the withdrawal of counsel." *Whiting*, 187 F.3d at 320 (cleaned up).

"A client's refusal to pay attorney's fees may constitute good cause to withdraw. In most cases, however, courts have permitted counsel to withdraw for lack of payment only where the client either deliberately disregarded financial obligations or failed to cooperate with counsel." *Parker*, 439 F.3d at 104 (internal citation and quotation marks omitted). Even if a client steadfastly refuses to pay fees, however, a court need not allow withdrawal on that basis when it would delay or disrupt the proceedings. *See Whiting*, 187 F.3d at 321; *see, e.g.*, *S.E.C. v. Great Am. Techs., Inc.*, No. 07-cv-10694 (DC), 2009 WL 4885153, at *5 (S.D.N.Y. Dec. 15, 2009) (denying motion to withdraw where withdrawal would compound previous discovery delays).

Worms's affidavits in support of his motions to withdraw cite nothing more than nonpayment of fees and a "deterioration of the [attorney-client] relationship" based on nonpayment of fees. *See* VDR 1643–46; MDR 7987–90. These affidavits fall short of demonstrating his clients' deliberate disregard for their financial obligations. To the contrary, Worms stated that he received an initial retainer and additional payments, and that he had

8

continued to work on the promise that he would be paid after the settlement of the Chapter 15 proceedings, but had developed doubts that settlement of that proceeding would be forthcoming. *See* VDR 1644.

However, even assuming that Worms demonstrated good cause to withdraw under normal circumstances, his withdrawal at this juncture would plainly be disruptive.   The district court had just remanded two issues in which Worms's conduct played a central role—the contempt sanctions against him and the fees imposed for his dilatory discovery tactics.  *See* VDR 1761.  Worms also remained counsel of record in another appeal in the same case concerning the turnover order.  When the bankruptcy court pressed Worms about whether he had moved to withdraw in that appeal, Worms stated that he had not.  *See id.* at 1759–60.  When the bankruptcy court pressed Worms about whether he intended to so move, he demurred.  *Id.*  It is difficult to read Worms's motions to withdraw in this context as anything other than an attempt to extricate himself from proceedings in which he was likely to face sanctions.

The record fully supports the bankruptcy court's conclusion that Worms's continued involvement in the case was necessary during the pendency of the proceedings that primarily concerned his own conduct, and the court explained that it was denying his motions only until the court resolved those issues.  *Id.* at 1761.  The bankruptcy court's order easily falls within its "wide latitude" to limit an attorney's withdrawal that would disrupt the proceedings.  *Whiting*, 187 F.3d at 321.  It thus did not abuse its discretion by denying Worms's motions without prejudice pending its decision on the contempt and fees issues remanded from the district court.

## Conclusion

For the foregoing reasons, the bankruptcy court's order is AFFIRMED.  The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: February 22, 2021
       New York, New York

_____
        ALISON J. NATHAN
     United States District Judge